JOEL M. KATLEMAN, APPELLEE, v. U. S. COMMUNITIES, INC., A DELAWARE CORPORATION, ET AL., APPELLANTS.

249 N. W. 2d 898

Filed January 26, 1977. No. 40654.

William J. Lindsay and Robert G. Decker, and James F. Kasher of Brady, Kasher and Pavel, for appellants.

Mark L. Laughlin of Zwieback & Laughlin, for appellee.

Heard before WHITE, C. J., McCOWN, NEWTON, and BRODKEY, JJ., and RONIN, District Judge.

McCown, J.

The plaintiff, Joel M. Katleman, brought this action against the defendants, U. S. Communities, Inc., and Pioneer National Title Insurance Company, for the recovery of liquidated damages for breach of a contract for the purchase and sale of real estate. The District Court entered judgment in favor of the plaintiff and against the defendants in the sum of $15,000, and the defendants have appealed.

On September 6, 1973, the plaintiff, Joel M. Katleman, and the defendant, U. S. Communities, Inc., executed a contract in which Katleman agreed to sell, and U. S. Communities, Inc., agreed to purchase, 11.3 acres of industrially zoned land in Douglas County, Nebraska. Title was to be conveyed by warranty deed, free and clear of all liens and encumbrances except certain easements and restrictions. The contract provided that the transaction was conditioned upon Katleman causing Burt Avenue east of 107th Avenue to be vacated at his expense on or before closing. The purchase price was $550,000. The contract recited that U. S. Communities, Inc., simultaneously with the execution of the agreement, would deposit the sum of $25,000 with Pioneer National Title Insurance Company to be held by it in escrow. Upon closing Pioneer was to pay that sum to Katleman as a portion of the payment then due. Closing was to take place December 10, 1973. The contract provided that if U. S. failed or refused to consummate the transaction contemplated for any reason other than for specified reasons, one of which was failure to furnish marketable title, "then all amounts paid and deposited with (Pioneer) pursuant to this agreement shall, at the option of (Katleman), be forfeited to (Katleman) as liquidated damages for (U. S.'s) failure to carry out the purchase. If (Katleman) is unable to show marketable title to the property described in Paragraph 1 hereof, subject to easements and restrictions of record, and to fulfill the other

conditions hereof, * * * all monies paid and deposited with (Pioneer) shall be refunded to (U.S.)."

On September 7, 1973, U. S. executed its draft on Bank of America in the sum of $25,000 payable to the order of Pioneer. The draft was delivered to Pioneer on September 10, 1973, and Pioneer issued its receipt, which read: "This is to confirm that Pioneer National Title Insurance Company in relation to the above real estate holds a good and sufficient draft in the amount of **$25,000.00, delivered to it by U. S. Communities Inc."** Pioneer never presented the draft for payment, and the inference from the record is convincing that the draft was no longer good at the time of trial.

On November 14, 1973, the parties executed a substantially similar contract replacing and superseding the contract of September 6, 1973. One change material to the issues involved here was that the closing date was changed from December 10, 1973, to February 15, 1974. The replacement contract also stated: "It is understood and agreed that (U. S.) has heretofore deposited the sum of $25,000.00 with (Pioneer), to be held by it in escrow and to be used in connection with the closing * * *." An assistant vice president of Pioneer signed the contract and Pioneer received a copy. On January 31, 1974, the parties deleted certain provisions of the agreement not material here, and reduced the purchase price to $510,000.

**After the November 14, 1973, contract was executed,** Katleman proceeded to take steps to vacate Burt Avenue. Recommendation from the city planning board was made December 4, 1973, and by February 12, 1974, the county board had voted to vacate the street. While these matters were proceeding, U. S. was having difficulty in obtaining financing. On February 13, 1974, to obtain an extension of the closing date to March 15, 1974, U. S. deposited with Katleman $10,000 to apply to the purchase price under the contract and $5,000 to be retained by Katleman as consideration for the extension. On

February 19, 1974, the county board passed the official resolution to vacate Burt Avenue.

On March 11 or 12, 1974, U. S. was still having financing difficulties and proposed converting the purchase contract to an option arrangement, but Katleman rejected the proposed option. On March 14, 1974, Katleman sent a telegram to U. S. confirming that he was ready to close, but there was no closing on March 15, 1974. On March 22, 1974, an attorney for U. S. wrote Katleman demanding the return of the $15,000 paid to Katleman on February 13, 1974, and the release to U. S. of the sum of $25,000 deposited with Pioneer. The basis for the claim involved alleged defects in title arising out of the Burt Avenue vacation proceedings. Katleman made demand on Pioneer for payment of the escrow money to him, but Pioneer refused. On April 12, 1974, Katleman brought this action against U. S. and Pioneer. The case was tried to the court without a jury. The court found that Katleman was entitled to receive the sum of $25,000 held in escrow but U. S. was entitled to credit for the sum of $10,000 paid to Katleman on the purchase price on February 13. The District Court entered judgment against the defendants jointly and severally in the sum of $15,000.

Both Pioneer and U. S. contend that Katleman was not entitled to the benefit of the liquidated damage provisions of the contract on the ground that Katleman was unable to close on March 15, 1974, because there was a cloud on the title. The claimed defects involved possible utilities easements allegedly reserved or created under the language of the county board resolution of February 19, 1974, vacating Burt Avenue. While there is some conflict in the evidence generally, an officer of Pioneer, who was empowered to make such a decision, testified that upon receipt of the necessary instruments of conveyance and a release signed only by Katleman, or Katleman and his wife, Pioneer would have issued its title insurance policy on the closing date.

The trial court specifically found that whatever deficiencies of title were indicated in the evidence, they were all matters that were readily or easily curable at or about the time of closing. The trial court also specifically found that the sole and only reason the transaction was not closed on March 15, 1974, was a lack of financing ability on the part of the defendant, U. S. Communities, Inc., at that time. The court also found that the title objections of the defendants were positions adopted after the fact. These findings are fully supported by the evidence in the record.

Pioneer contends that the contract provided for the escrow of merely the $25,000 draft and not the escrow of $25,000 in money or cash. It asserts that it should only be required to endorse over to Katleman the $25,000 draft, and should not be jointly and severally liable with U. S..

The trial court made some findings of fact as to Pioneer's relationship with U. S. in areas beyond that of an escrow agent. Pioneer's liability here is established on the basis of its liability as the escrow agent, and other findings and additional grounds for liability are unnecessary.

While escrows traditionally involve documents, it is no longer open to question that money may also be delivered in escrow. See, 28 Am. Jur. 2d, Escrow, § 2, p. 6; Restatement, Agency 2d, § 14-D, comment (a), p. 67.

Where a person assumes to and does act as the depositary in escrow, he is absolutely bound by the terms and conditions of the deposit and charged with a strict execution of the duties voluntarily assumed. He is held to strict compliance with the terms of the escrow agreement. If he violates instructions or acts negligently, he is ordinarly liable for any loss occasioned by his breach of duty. See 28 Am. Jur. 2d, Escrow, § 16, p. 24, and § 18, p. 27.

Pioneer's assertion that the contract only required it to hold the $25,000 draft and deliver or return it at clos-

ing is destroyed by the terms of both the contract and the draft. If the draft was to be held by Pioneer, and either delivered to Katleman or returned to U. S., the draft should have been made payable to Katleman. Instead, it was made payable to Pioneer. The contract recited that "the sum of $25,000" was "to be used in connection with the closing." Under certain contingencies "all or part of said sum" was "to be paid" to Katleman. The contract also refers to "all amounts paid or deposited with Pioneer" or "all monies paid and deposited with Pioneer," in providing for the payment or refund of the escrowed funds in the event of failure or refusal to consummate the transaction. Pioneer's receipt for the $25,000 draft in September 1973, acknowledged that Pioneer held "a good and sufficient draft in the amount of $25,000.00." There is evidence that on at least one occasion when Pioneer was asked if it had $25,000 deposited under the contract, an officer advised Katleman that Pioneer had $25,000. The only reasonable conclusion on the basis of this record is that the $25,000 deposit in escrow was to be in cash or its equivalent, and that under the facts shown by the record here Pioneer should be estopped to deny that the sum of $25,000 was, in fact, on deposit. It was the duty of Pioneer, under the facts here, to cash the draft and hold the money, or promptly advise the principals if the draft was not paid. An undue or **unreasonable delay in presenting the draft for payment** would be negligence which might give rise to liability to the principals for any resulting loss.

In a case dealing with a very similar factual situation in which the escrow agreement called for the escrow agent to hold the sum of $10,000, a check for that amount was delivered to the escrow agent but was never cashed, and the agent represented to the party that cash was held, the court said: "It was the duty of the defendant in the circumstances to cash the check and hold the money. * * * the escrow company * * * admitted that it was exactly as responsible to the plaintiffs as if the

money had in fact been deposited in cash." The court also said: "From and after the time defendant informed the plaintiffs that the $10,000 deposit had been made and plaintiff relied and acted upon that information, the defendant was estopped to deny that the sum of $10,000 was in fact on deposit. * * * Defendant was then obligated to pay the sum of $10,000 in cash to plaintiffs upon full compliance with the terms of the escrow." Mefford v. Security Title Ins. Co., 199 Cal. App. 2d 578, 18 Cal. Rptr. 877.

Pioneer breached its duty as an escrow agent in holding the draft instead of cashing it and holding the money. Where a breach of that duty resulted in a loss to one of the principals through the negligence of Pioneer, Pioneer is liable to its principal as if the money had in fact been deposited in cash. The evidence in this record fully supports the findings and judgment of the District Court against both defendants.

In a law action tried to the court without a jury, the findings of the court have the effect of a jury verdict and will not be disturbed on appeal unless clearly wrong. Insurance Co. of North America v. Hawkins, *ante* p. 126, 246 N. W. 2d 878.

AFFIRMED.