Thomas E. and Linda L. KING,
Petitioners,

v.

**FIRST NATIONAL BANK OF FAIRBANKS, Respondent.**

No. 5380.

Supreme Court of Alaska.

July 9, 1982.

Marc Grober, Anchorage, for petitioners.

Roger Brunner, Rice, Hoppner, Brown & Brunner, Fairbanks, for respondent.

Before RABINOWITZ, C. J., and CONNOR, BURKE, MATTHEWS and COMPTON, JJ.

## OPINION

CONNOR, Justice.

Petitioners Thomas E. and Linda L. King seek review of the superior court's grant of partial summary judgment for defendant First National Bank of Fairbanks (hereinafter referred to as Bank). The Bank moved for summary judgment. We have determined that review is appropriate.[1]

---

1. This case involves multiple defendants and several causes of action, and was originally framed as an appeal. However, inasmuch as the partial summary judgment does not dispose of petitioners' claims against all parties, and because it has not been certified as a final judgment under Civil Rule 54(b), there is no right of appeal to this court. Appellate Rule 202. Nonetheless, it is apparent that an immediate review of the superior court's order could

## I. FACTS

In June of 1969, Thomas and Linda King agreed to purchase a parcel of real property near Fairbanks from Elmer and Lesta Olson. The Olsons had acquired the land two years earlier from the State of Alaska under a long-term purchase agreement, wherein the state retained legal title pending full payment of the purchase price. The Olsons were still making payments on the land when they contracted with the Kings.

The Kings hired an attorney to prepare the documents necessary for the conveyance. On July 9, 1969, the Kings and the Olsons met to execute a deed of trust, promissory note and request for reconveyance. Another document, entitled "Collection Instructions" and signed only by the Olsons, was addressed to the First National Bank of Fairbanks, respondent herein. This instrument stated that the deed of trust, promissory note and request for reconveyance were thereby deposited with Bank's escrow department, subject to the instructions in the instrument. The instructions directed the Bank to accept payments on the note, to remit a portion of each payment to the state towards satisfaction of the Olsons' purchase contract, and to deposit the remainder in the Olsons' personal savings account at the Bank. Upon full payment of the note, the Bank was to forward the note, the executed request for reconveyance, and the deed of trust to the Kings.

On July 17, 1969, Elmer Olson went to the Bank and altered portions of the collection instructions so as to have the Bank credit the entire amount of each payment to the Olsons' savings account. The Kings, unaware of this change in the instructions, continued to pay the Bank the amounts due on the note. The Bank complied with the amended instructions and deposited all payments in the Olsons' account. In April 1971, having paid the note in full, the Kings requested the Bank to deliver the deposited documents. The Bank returned the note and the request for reconveyance, and informed the Kings of where to obtain the deed of trust.

The Kings were notified by the Fairbanks tax assessor in December of 1972 that the state had terminated the Olsons' contract on December 11, 1972, for failure to make the annual payment due in October 1971. After unsuccessful attempts to retain counsel in Fairbanks to initiate a lawsuit, the Kings, then living in California, abandoned the matter for several years. They ultimately returned to Alaska and in December 1978 filed this action against the Olsons, the state, the Bank, and the attorney who prepared the documents.

The amended complaint alleged that the Bank was negligent in allowing the Olsons to modify the collection instructions and in failing to inform the Kings of such modification. It also alleged breach of the escrow agreement among the Bank, the Olsons and the Kings.

Prior to trial, the Bank moved for summary judgment on both counts on the theories that (1) there existed no contract or escrow agreement between the Kings and the Bank for it to breach; (2) even if there was a contract, any action upon it was barred by the applicable statute of limitations;[2] and (3) any negligence claim was barred, a fortiori, by the shorter statute of limitations period pertaining to tort actions.[3]

---

materially advance the conclusion of this litigation, and that further delay might impose unnecessary expense and hardship upon the parties. Appellate Rule 402(b)(1) and (2). Upon the requests of both parties, we therefore grant review.

2. AS 09.10.050 provides, in part:
"No person may bring an action (1) upon a contract or liability, express or implied . . . unless commenced within six years."

3. AS 09.10.070 reads:
"No person may bring an action (1) for libel, slander, assault, battery, seduction, false imprisonment, or for any injury to the person or rights of another not arising on contract and not specifically provided otherwise; (2) upon a statute for a forfeiture or penalty to the state; or (3) upon a liability created by statute, other than a penalty or forfeiture; unless commenced within two years."

The superior court ordered summary judgment in favor of the Bank without stating its reasons for doing so.[4] To have so ordered the court must have found that no genuine issue of material fact existed with respect to either of the Kings' claims, and that the Bank was entitled to prevail on both causes of action as a matter of law. Civil Rule 56(c); *see also Wickwire v. McFadden*, 576 P.2d 986 (Alaska 1978). Specifically, the court must have concluded, on the basis of the pleadings and documents submitted by the Bank, that there was no escrow or other contractual relationship between the Bank and the Kings, or, that if such existed, the statute of limitations had run.

## II. ANALYSIS

Summary judgment should be granted only where the moving party is entitled to judgment as a matter of law and where no genuine issue of fact remains for trial. On appeal from an order granting summary judgment, we must resolve all reasonable inferences in favor of the non-moving party and against the movant. *Clabaugh v. Bottcher*, 545 P.2d 172 (Alaska 1976). The burden is on the movant to show that the law requires judgment in its favor. *Concerned Citizens of South Kenai Peninsula v. Kenai Peninsula Borough*, 527 P.2d 447 (Alaska 1974).

In the instant case, the Kings seek recovery based upon the Bank's alleged breach of what the Kings call an "escrow agreement," and what the Bank terms "collection instructions." The Bank contends that there was no escrow agreement, that it never entered into any contractual relationship with the Kings, and that it received its instructions exclusively from the Olsons.

### A. Escrow Theory

First, we consider the Kings' contention that the deposit of the documents and instructions with the Bank created an escrow to which they were parties. While there are no cases in Alaska for us to turn to, courts of other jurisdictions have established a fairly consistent body of escrow law. An escrow can be defined as a written instrument, which by its terms imports a legal obligation, deposited by the grantor, promisor or obligor with a stranger or third person, to be kept by this person until performance of a condition or happening of a certain event, and then to be delivered over to the grantee, promisee or obligee to take effect. *Young v. Bishop*, 353 P.2d 1017, 1021 (Ariz.1960); *Pike v. Triska*, 165 Neb. 104, 84 N.W.2d 311, 321 (1957); *Lechner v. Halling*, 35 Wash.2d 903, 216 P.2d 179, 185 (1950). In order for there to be an escrow, there must be a contract between the parties. *Security-First National Bank of Los Angeles v. Clark*, 8 Cal.App.2d 709, 48 P.2d 167 (1935); *Hoffman v. Eighth Judicial District Court*, 90 Nev. 267, 523 P.2d 848 (1974); *Cloud v. Winn*, 303 P.2d 305 (Okl. 1956). The Restatement (Second) of Agency further explains an escrow. It states:

"An escrow holder ... differs from a person receiving property to be delivered to a third person, either gratuitously or otherwise, upon the happening of an event, ... but who makes no agreement with the third person."

Restatement (Second) of Agency § 14D, comment c (1958). The appendix states:

"Thus where one delivers property to another to be delivered to a third person upon the performance or act by such third person, there is no escrow. In such a case the intermediary is an agent whose power can be revoked or changed at the will of the one who has appointed him."

Restatement (Second) of Agency, Appendix § 14D at 58 (1958) (citations omitted). Under the Restatement view, then, a grantee must itself be a party to an agreement with the intermediary in order for an escrow to be created and in order for the intermediary to owe fiduciary duties to the grantee. Consequently, there was no escrow between the Bank and Kings.

---

**4.** Findings of fact and conclusions of law are not required for summary judgment orders. Civil Rule 52(a).

■ However, the Bank is not necessarily free from liability as the Kings may be third party beneficiaries of the contract between the Olsons and the Bank. The applicable rule is:

"[W]hen an [agent's] employment is for the benefit of a particular person or for the performance of a single obligation by the principal, it may be found that the agreement with the principal was a contract for the benefit of the donee or obligee. If so, the agent is responsible to such person for his non-performance or misperformance...."

Restatement (Second) of Agency § 342, comment a (1958). An agent acting on behalf of one person may be held liable to a third person for failure to perform a contract intended to benefit the third person. The third party is justified in relying on the contract and it may not be changed without his consent.[5]

■ The documents submitted by the Bank with its summary judgment motion support the proposition that the Kings might be third party beneficiaries of the contract between the Bank and the Olsons. The documents included copies of the Bank's original instructions and the amended instructions. The original instructions were drafted by the Kings' attorney with particular sections intended to protect the Kings' interest. Paragraph three[6] of the instructions provided that the instruments delivered to the Bank, which included the promissory note and the deed of trust, could not be recalled by the Olsons unless the Kings fell "more than thirty (30) days in arrears of payment." Paragraph two[7] instructed the Bank to apply the money received from the Kings toward the Olson's debt to the state. The remainder was to go to the Olsons. This provision was obviously intended to prevent the Olsons from defaulting on their debt to the state. Elmer Olson later crossed out and initialed paragraph 2(b). It is possible for the lower court to find that the Kings justifiably relied on these instructions as written assurance of receiving the executed deed and request for reconveyance after they had finished paying the note.

Though no escrow was formed, summary judgment should have been denied on the basis of the third party beneficiary doctrine. The legal distinction between an escrow

---

**5.** The Restatement of Contracts states:

"The beneficiary is justified in relying on the promise and it is immaterial whether he learns of it from the promisor, the promisee or a third party. If there is a material change of position in reliance on the promise, the change of position precludes discharge or variation of the contract without his consent. It is not necessary that the creditor beneficiary enter into a novation with the promisor...."

Restatement of Contracts § 143, comment a (1932).

**6.** Paragraph 3 of the collection instructions states:

"*3. Collection Only*: The instruments delivered to you hereby and hereunder are returnable to the undersigned upon written request therefor tendered at any time that the aforementioned Promissory Note is more than thirty (30) days in arrears of payment.

However, upon the full payment of said Promissory Note, you are authorized to endorse thereon 'Paid in Full', or words of similar import, and to deliver all instruments held by you hereunder to the aforementioned Thomas E. King and Linda L. King, their heirs and assigns."

**7.** Paragraph 2 of the collection instructions states:

"*2. General Instructions*: You are instructed to accept and receipt for payments made in liquidation of the aforesaid Promissory Note, and to apply and distribute the same in the following manner:

(a) Deduct your usual handling charges of one percent (1%) of payments made, and also your initial $10.00 acceptance fee;

(b) Out of every $100.00 paid on said Promissory Note, remit $70.00 to the Alaska Department of Natural Resources, Division of Lands, 344 Sixth Avenue, Anchorage, Alaska, for application on outstanding principal and accrued interest remaining to be paid on *ADL NO. 36927*, a Contract for the Sale of Real Property, a copy of which contract is furnished you herewith, such remittance to continue until said contract is paid in full. You are advised that the present outstanding principal balance thereof is about *$2,430.00*.

(c) Deposit the balance of all payment proceeds to the savings account of Elmer J. and/or Lesta Olson, at your bank, known as Savings Account No. _____."

holder and an agent who acts solely on behalf of one party loses much of its significance in the context of the present case. Though the third party beneficiary doctrine was not specifically propounded by the Kings, the documents attached as exhibits to the complaint and those submitted on the motion for summary judgment contained facts supporting the conclusion that the Kings were beneficiaries of the contract between the Bank and the Olsons. Thus, the third party beneficiary doctrine was encompassed by the pleading and was a discernible circumstance from the record before the superior court. On that basis, summary judgment should have been denied.[8]

### B. Statute of Limitation Claims

■ We now consider whether the superior court's order granting summary judgment could have been based upon a finding that the applicable statutes of limitation had expired on both of the Kings' claims. The superior court apparently applied the two-year tort statute of limitations to the fifth cause of action, which alleged that the Bank was negligent in allowing the amendment of the escrow instructions, and thus determined that the statute had run. The escrow instructions were changed in 1969, and the Kings were first notified of this fact by a letter from the tax assessor in December 1972. Even if we apply the more liberal rule that causes of action involving fraud or concealment accrue from the date the wrong is discovered, the Kings' right to bring a tort claim would have expired, at the latest, in December 1974. Insofar as the cause of action is based on allegations of negligence alone, the superior court's de-

termination was correct. The Bank was entitled to summary judgment on the negligence claim as a matter of law.

■ The other cause of action alleged the same acts and omissions as did the tort claim. However the legal theory is based in contract. Actions upon express or implied contracts must be commenced within six years of the time when the right of action accrues.[9] *See Howarth v. First National Bank of Anchorage*, 540 P.2d 486, 490 (Alaska 1975). The rights of the third party beneficiaries are subject to the same statutes of limitation that govern ordinary actions on written contracts. *See H. B. Deal and Co. v. Bodling*, 283 S.W.2d 855 (Ark. 1955); *Bogart v. George K. Porter Co.*, 193 Cal. 197, 223 P. 959 (1924). "Ordinarily, a cause of action for breach of contract accrues as soon as the promissor fails to do the thing contracted for, and the statute of limitations begins to run at such time." *Howarth v. First National Bank of Anchorage*, 540 P.2d 486, 491 (Alaska 1975). The Kings acquired a right to sue as creditor beneficiaries of the contract between the Olsons and the Bank on July 17, 1969, the date on which Elmer Olson was allowed to amend the provisions of the collection instructions. The amendment constituted a breach of contract because it violated the original instructions and was made without the Kings' consent. The six-year statute of limitations expired on July 18, 1975.

■ Though the Kings filed this action after the expiration of the six-year statute of limitations, the action was not time barred. The Soldiers' and Sailors' Civil Relief Act of 1940[10] states that any period of

---

**8.** The Bank argues that pursuant to Civil Rule 56(e) it was incumbent upon the Kings to come forward with evidence showing the existence of an escrow agreement. However, Civil Rule 56(e) requires defense only if a motion for summary judgment is "supported as provided in this rule" and states that even if no opposing evidentiary matter is submitted summary judgment shall be entered only "if appropriate." *See* 10 C. Wright and A. Miller, Federal Practice and Procedure, Civil § 2739 (1973). Thus, the Bank incorrectly presupposes that it met its initial burden as the moving party of showing

that it was entitled to judgment under established principles of law.

**9.** AS 09.10.050.

**10.** The pertinent provision of the Soldiers' and Sailors' Civil Relief Act of 1940, 50 U.S.C.App. § 525 (1977) reads:

"The period of military service shall not be included in computing any period now or hereafter to be limited by any law, regulation, or order for the bringing of any action or proceeding in any court, board, bureau, commission, department, or other agency of

military service shall not be included in computation for a statute of limitations. Since Thomas King was in the Air Force for over three and one-half years between 1969 and 1975, the six-year statute did not expire before this action was filed. Therefore, the granting of summary judgment with respect to the contract statute of limitations was in error.[11]

We reverse in part the grant of summary judgment and remand so as to give the parties a full and fair chance to dispute the facts material to the existence of a third party beneficiary contract. If the superior court finds, on the basis of the principles discussed herein, that such a contract existed, judgment under Civil Rule 56 shall be entered for the petitioners.

REVERSED in part, AFFIRMED in part, and REMANDED with instructions.

government by or against any person in military service or by or against his heirs, executors, administrators, or assigns, whether such cause of action or the right or privilege to institute such action or proceeding shall have accrued prior to or during the period of such service . . . ."

11. As we view the Kings as having an undivided interest in this action, the practical resolution of this case finds Thomas King able to proceed as to the entire claim.