SMITH v FIRST NATIONAL BANK & TRUST COMPANY OF
STURGIS

Docket No. 98043. Submitted March 2, 1988, at Grand Rapids. De-
cided June 5, 1989.

Hamlin A. and Amy Lou Smith purchased a property from
William G. and Kathryn Steger on a land contract. Payments
were collected by First National Bank and Trust Company of
Sturgis, the holder of an underlying mortgage on the property.
The mortgage payment was made from the land contract
payment and the balance was sent to the Stegers. The Smiths
made a large lump sum payment which reduced the land
contract balance to below the mortgage balance. The land
contract provided for a conveyance subject to assumption of the
balance owing on the mortgage when the land contract balance
was reduced to that owing on the mortgage. It further provided
for liability for acts contrary to the escrow agreement where
the bank had knowledge of the facts necessary to determine
that its actions were contrary to the provisions of the escrow
agreement and where the acts were not performed in good
faith. The parties entered into a real estate escrow agreement
designating the bank as escrow agent to hold and deliver the
warranty deed. The escrow agreement incorporated the land
contract by reference. The Smiths made a lump sum final
payment and the bank delivered the deed to them, but the
Stegers refused to pay the outstanding mortgage balance. The
Smiths brought an action against the bank and the Stegers in
the St. Joseph Circuit Court. Plaintiffs alleged against the bank
breach of contract, negligence and liability to plaintiffs as third-
party beneficiaries of the collection agreement between the
bank and the Stegers. The court, James P. Noecker, J., granted
summary disposition in favor of the bank. Plaintiffs appealed.

The Court of Appeals *held:*

1. There was a genuine issue of material fact as to whether
the bank's failure to deliver a deed to plaintiffs subject to
assumption of the mortgage in accordance with the land con-

REFERENCES
Am Jur 2d, Contracts § 312; Escrow §§ 11 *et seq.*
See the Index to Annotations under Escrow.

tact upon execution of the escrow agreement constituted a breach of the bank's duties under the escrow agreement.

2. There was a genuine issue of fact as to whether the bank's failure to deliver a deed subject to assumption of the mortgage constituted negligence, since, as escrow agent, the bank was acting as plaintiffs' agent.

3. Plaintiffs were third-party beneficiaries of the collection and disbursement agreement between the bank and the Stegers. A genuine issue of fact existed regarding what the agreement provided for the allocation of lump sum payments.

Reversed and remanded.

MacKENZIE, J., dissented. She did not agree that the escrow agreement gave rise to a duty owed by the bank to convey the property to plaintiffs once the sellers' mortgage balance exceeded the land contract balance, since that happened prior to the existence of the escrow agreement. Nor did she agree that plaintiffs were third-party beneficiaries under the collection agreement. She would affirm.

1. AGENCY — ESCROW AGENTS.

The duties and liabilities imposed upon an escrow agent are those set forth in the escrow agreement.

2. AGENCY — ESCROW AGENTS — NEGLIGENCE.

An escrow agent is the agent of both parties to the escrow agreement; an escrow agent ceases to be the agent of both parties and becomes agent only of the party in whom title to property held in escrow vests when the property has been placed in escrow under an agreement that it is to go to that party upon the meeting of a condition and that condition is met; an escrow agent may be liable in tort for the negligent performance of its duties as escrow agent or breach of fiduciary responsibilities owed to its principal.

3. CONTRACTS — THIRD-PARTY BENEFICIARIES — STANDING.

A third-party beneficiary of a contract has the same right to enforce the contract as if he were a party to the contract (MCL 600.1405; MSA 27A.1405).

*Weiner, Wade & Tucker* (by *Theodore J. Tucker*), for plaintiffs.

*Howard & Howard* (by *Lawrence J. Murphy*), for First National Bank and Trust Company of Sturgis.

Before: Sullivan, P.J., and MacKenzie and G.
Schnelz,* JJ.

G. Schnelz, J. Plaintiffs appeal as of right from
an order granting summary disposition in favor of
defendant First National Bank and Trust Com-
pany of Sturgis on Counts II and III of plaintiffs'
complaint pursuant to MCR 2.116(C)(10). We re-
verse.

In 1982 defendants William G. Steger and Ka-
thryn Steger sold a house located in St. Joseph
County to plaintiffs for $185,000 on a land con-
tract. Plaintiffs' down payment consisted of their
summer cottage, valued at $85,000, plus $20,000 in
cash. The remaining $80,000 was to be paid in
monthly payments of $733 at eleven percent inter-
est. The monthly payments were to be made until
July 1, 1985, at which time a balloon payment for
the remaining balance was due.

Defendants Steger had a mortgage on the home
with defendant bank and designated the bank as
their collection agent in paragraph (3)(k) of the
land contract. Defendant bank was to apply ap-
proximately $693 of plaintiffs' land contract pay-
ment to defendants Steger's mortgage and send
the remaining $40 balance to defendants Steger.

Plaintiffs initially made only the monthly in-
stallment payments of $733. Then, on or about
May 1, 1983, plaintiffs made a $30,000 land con-
tract payment, which reduced the principal owed
on the land contract to $50,000. Defendant bank
applied $693 of the $30,000 to defendants Steger's
mortgage and remitted the remainder of plaintiffs'
payment to defendants Steger. As a result, the
balance due on defendants Steger's mortgage to
the bank exceeded plaintiffs' land contract debt.
On June 17, 1983, plaintiffs, defendants Steger and

---

* Circuit judge, sitting on the Court of Appeals by assignment.

defendant bank entered into a real estate escrow agreement in conjunction with the land contract sale, designating the bank as the escrow agent to hold and deliver the warranty deed.

On July 1, 1985, plaintiffs made a final balloon payment of $42,300 and defendant bank delivered to plaintiffs the warranty deed on the home. However, defendants Steger still owed approximately $17,600 on their mortgage debt to defendant bank.

Defendants Steger refused to pay their outstanding mortgage debt. By notice dated November 19, 1985, defendant bank declared defendants Steger in default on their mortgage in the amount of $17,622.52. A mortgage sale was set for December 23, 1985.

On November 27, 1985, plaintiffs filed a complaint against both the Stegers and defendant bank seeking relief from the foreclosure proceeding. Count I of plaintiffs' complaint alleged that defendants Steger failed to deliver marketable title free and clear of the mortgage lien. In Counts II and III, plaintiffs sought a judgment against the bank in a sum equal to the unpaid mortgage balance. While the complaint could have been drafted with more clarity, we discern three potential theories of liability asserted by plaintiffs against the bank: breach of contract, negligence, and liability to plaintiffs as third-party beneficiaries of a collection agreement between the Stegers and the bank.

I

In deciding whether to grant or deny a motion for summary disposition brought under MCR 2.116(C)(10) the court is required to view the matter in a light most favorable to the nonmoving party, giving that party the benefit of reasonable

doubt to find any facts in support of its assertion that an issue of fact exists. *Horen v Coleco Industries, Inc,* 169 Mich App 725, 728; 426 NW2d 794 (1988). Before granting summary disposition, the court must be satisfied that it would be impossible for the claim asserted to be supported by the evidence at trial. *Id.* The trial court concluded that, as a matter of law, defendant bank was entitled to summary disposition on Count II because the court was unable to find a duty owed by the bank to plaintiffs. We find that the bank had certain duties to the plaintiffs arising from the real estate escrow agreement and its status as escrow agent.

The duties and liabilities imposed upon an escrow agent are those set forth in the escrow agreement. *The Starboard Tack Corp v Meister,* 103 Mich App 557, 562; 303 NW2d 38 (1981). The escrow agreement, like all contracts, is to be construed to effectuate the intent of the parties. If the agreement is ambiguous, the facts and circumstances surrounding the creation of the agreement may be considered. *Id.*

The real estate escrow agreement provided in pertinent part:

> The ESCROW AGENT is instructed by SELLERS to deliver the Warranty Deed to PURCHASERS when the full amount of principal and interest, as specified in the LAND CONTRACT, have been paid, which shall be accomplished when the SELLERS have provided the ESCROW AGENT with a receipt showing all amounts of principal and interest have been paid. In addition, the PURCHASERS shall have complied with all of the terms and conditions of the LAND CONTRACT, including the payment of taxes, insurance and special assessments, which shall also be acknowledged by SELLERS to ESCROW AGENT.

The land contract was incorporated by reference

into the escrow agreement. Paragraph 3(b) of the land contract provides that, if the seller's title is encumbered by a mortgage, the seller is obligated to keep payments on the mortgage current. Should the seller default on its mortgage, the contract allows the purchaser the right to pay on the mortgage with such payments to be credited on the land contract. The last sentence of paragraph 3(b) states:

> When the amount owing hereon is reduced to that owing upon such contract or mortgage or upon any mortgage executed under either of the powers contained in this contract, a conveyance shall be made in the form above provided with a covenant by the grantee to assume and pay the same.

Under the terms of paragraph 3(b), at the time plaintiffs made the $30,000 principal payment, reducing the balance owed on the land contract to a sum less than the balance owed on the mortgage, the property should have been conveyed to the plaintiffs subject to assumption of the balance then owing on the mortgage.

We think a genuine issue of material fact exists as to whether the failure of the bank to deliver the deed to plaintiffs subject to assumption of the mortgage in accordance with paragraph 3(b), upon execution of the escrow agreement, constituted a breach of the bank's contractual duties under paragraph 2 of the escrow agreement. Under paragraph 7 of the escrow agreement, the bank is liable for acts which are contrary to the provisions of the escrow agreement, provided the bank has knowledge of the necessary facts to determine that its actions are contrary to the provisions of the escrow agreement and further provided such acts were not performed in good faith. Where, as here,

the same party was acting as escrow agent, collection and disbursement agent, and was the mortgagee on the underlying mortgage, a genuine issue of fact is presented as to whether that party (the bank) had knowledge of the necessary facts to determine that its actions were contrary to the provisions of the escrow agreement and not taken in good faith.

## II

Alternatively, a genuine issue of fact exists as to whether the bank's failure to deliver the deed subject to assumption of the mortgage constitutes negligence. While we agree with defendant that, as collection agent, the bank was not acting as agent for plaintiffs, as escrow agent, the bank was plaintiffs' agent.

An escrow agent is the agent of both parties to the escrow agreement. *Laurentide Leasing Co v Schomisch,* 382 Mich 155, 161; 169 NW2d 322 (1969); *Frankiewicz v Konwinski,* 246 Mich 473, 477; 224 NW 368 (1929). The escrow agent ceases to be the agent of both parties and becomes agent only of the party in whom title to the property held in escrow vests when the property has been placed in escrow under an agreement that it is to go to that party upon the meeting of a condition and that condition is met. *Edward Rose Sales Co v Shafer,* 41 Mich App 105, 107; 199 NW2d 655 (1972). Thus, an escrow agent may be liable in tort for the negligent performance of its duties as escrow agent or breach of fiduciary responsibilities owed to its principal. See *Michigan National Bank v The Kroger Co,* 619 F Supp 1149, 1156 (ED Mich, 1985).

Where a person assumes to and does act as the

depositary in escrow, he is absolutely bound by the
terms and conditions of the deposit and charged
with a strict execution of the duties voluntarily
assumed. He is held to strict compliance with the
terms of the escrow agreement. If he violates
instructions or acts negligently, he is ordinarily
liable for any loss occasioned by his breach of
duty. See 28 Am Jur 2d, Escrow, § 16, p 24, and
§ 18, p 27. [*Katleman v U S Communities, Inc,* 197
Neb 443, 447; 249 NW2d 898 (1977).]

Whether, in light of the bank's knowledge of the
mortgage and the terms of the land contract, the
bank's failure to deliver the warranty deed to
plaintiffs upon execution of the escrow agreement
or failure to seek further instructions from the
plaintiffs fell short of the proper standards for the
performance of its duties as an escrow agent or
breached fiduciary duties owed to plaintiffs is a
matter to be decided by the trier of fact.

III

The final theory of liability asserted against the
bank was based on plaintiffs' asserted status as
third-party beneficiaries of the collection and dis-
bursement agreement between defendants Steger
and the bank.

Plaintiffs, while parties to both the land contract
and escrow agreement, were *not* parties to the
agreement between the Stegers and the bank,
wherein the bank agreed to collect plaintiffs' pay-
ments under the land contract, retain a portion of
the payment for payment of the Stegers' mortgage
and remit the balance to the Stegers for payment
on the land contract. Plaintiffs claim to be third-
party beneficiaries of this agreement pursuant to
MCL 600.1405; MSA 27A.1405 and further claim
that the bank breached its obligations under this

agreement when it failed to apply the $30,000 payment on the mortgage principal balance.

Under similar facts, the Supreme Court of Alaska found the plaintiffs to have a viable third-party beneficiary claim. In *King v First National Bank of Fairbanks,* 647 P2d 596 (Alas, 1982), the plaintiffs purchased certain real property from Elmer and Lesta Olson, who had previously acquired the land from the state of Alaska under a long-term purchase agreement wherein the state retained legal title pending full payment of the purchase price. In conjunction with the execution of certain documents pertaining to the purchase by plaintiffs from the Olsons, the Olsons signed a document entitled "Collection Instructions" addressed to the defendant First National Bank of Fairbanks. The document stated that the deed of trust and other documents were deposited with First National subject to the instructions in the document. The instructions directed First National to accept the purchasers' payments, remit a portion of each payment to the state toward satisfaction of the Olsons' purchase contract, and deposit the balance of the payment in the Olsons' First National savings account. Upon full payment, First National was to forward the deed of trust to the plaintiffs. Unbeknownst to the plaintiffs, the Olsons subsequently altered the collection instructions so as to have First National credit the entire amount of each payment to the Olsons' bank account. Sometime after they paid the purchase price in full, the plaintiffs were notified that the state had terminated the Olsons' contract due to nonpayment.

The plaintiffs brought suit against First National, alleging negligence and breach of an escrow agreement between First National, the Olsons, and the Kings. The lower court granted summary judg-

ment in favor of First National. The Alaska Supreme Court reversed in part. While the court held that First National could not be held liable for breach of an escrow agreement, because no escrow agreement had been entered into between First National and the plaintiffs, the court stated:

> However, the Bank is not necessarily free from liability as the Kings may be third party beneficiaries of the contract between the Olsons and the Bank. The applicable rule is:
> "[W]hen an [agent's] employment is for the benefit of a particular person or for the performance of a single obligation by the principal, it may be found that the agreement with the principal was a contract for the benefit of the donee or obligee. If so, the agent is responsible to such person for his non-performance or misperformance . . . ."
> Restatement (Second) of Agency § 342, comment a (1958). An agent acting on behalf of one person may be held liable to a third person for failure to perform a contract intended to benefit the third person. The third party is justified in relying on the contract and it may not be changed without his consent. [647 P2d 600.]

The court concluded that the documents submitted created a genuine issue of material fact on the issue of whether the plaintiffs were beneficiaries of the contract between First National and the Olsons and reversed the order of summary judgment on the breach of contract claim.[1]

MCL 600.1405; MSA 27A.1405 provides:

> Any person for whose benefit a promise is made by way of contract, as hereinafter defined, has the same right to enforce said promise that he would have had if the said promise had been made directly to him as the promisee.

---

[1] The Alaska Supreme Court held that the negligence claim against First National was barred by the statute of limitations.

In the instant case, the bank promised to apply the monthly payments collected by it to reduce the mortgage balance. In light of the bank's dual status as collection/disbursement agent and mortgagee, its knowledge of the land contract, and the provision in paragraph 3(b) of the land contract obligating the seller to keep the mortgage current and providing the purchaser a means of doing so should the seller default, we construe the bank's promise to apply a portion of the payments to the mortgage as "something direct for plaintiffs." *Rieth-Riley Construction Co, Inc v Dep't of Transportation,* 136 Mich App 425, 430, 432; 357 NW2d 62 (1984), lv den 422 Mich 911 (1985).

Our inquiry does not end here, however. While it is undisputed that the bank promised to apply a portion of the normal monthly land contract payment to the monthly payment due on the mortgage, a genuine issue of material fact exists regarding what the agreement was between the bank and defendants Steger as to how other-than-normal monthly payments would be allocated. The bank argues the parties did not intend that such payments would be applied to the mortgage principal balance; however, the bank did apply the entire final balloon payment to reduce the principal indebtedness on the mortgage. The issue must be resolved by the trier of fact.

IV

Accordingly, for the reasons stated in this opinion, we reverse the order of summary disposition in favor of defendant bank and remand this matter to the trial court for further proceedings consistent with this opinion. We do not retain jurisdiction.

SULLIVAN, P.J., concurred.

MACKENZIE, J. *(dissenting)*. I respectfully dissent.

The majority concludes that the parties' real estate escrow agreement gave rise to a duty owed by defendant bank to plaintiff land contract purchasers to convey the property to plaintiffs once the sellers' mortgage balance exceeded plaintiffs' land contract balance and that a fact question exists as to whether breach of this duty constituted negligence. On these facts, I cannot agree that the bank owed plaintiffs such a duty to convey. The majority finds a duty owed to plaintiffs by noting that the escrow agreement incorporated by reference plaintiffs' and defendant sellers' land contract and then relies on the provisions of paragraph 3(b) of the land contract. Paragraph 3(b) provides that

> [I]f the title of Seller is evidenced by land contract or now or hereafter encumbered by mortgage, Seller shall meet the payments of principal and interest thereon as they mature and produce evidence thereof to Purchaser on demand. . . . When the amount owing hereon is reduced to that owing upon such . . . mortgage[,] . . . a conveyance shall be made in the form above provided with a covenant by the grantee to assume and pay the same.

Thus, when the land contract balance equalled the amount of the seller's mortgage, a deed with the buyer's covenant to assume and pay the mortgage should have been delivered.

In this case, the buyer's land contract balance equalled the seller's mortgage balance once the buyers made their $30,000 payment on May 1, 1983, approximately 1½ months *before* the execution of the June 17, 1983, escrow agreement. Clearly, under the language of paragraph 3(b), the right to a conveyance pursuant to that paragraph

arose on or about May 1. Since the escrow agreement had not yet come into existence at that time, I fail to see how it could create a duty in the bank to effectuate such a conveyance.

The majority seems to suggest that, upon execution of the escrow agreement, the bank owed a duty to plaintiffs, in essence, to remind them of their right under paragraph 3(b) to an immediate conveyance rather than postponing receipt of a deed per the escrow arrangement. I know of no authority for the proposition that an escrow agent must advise the parties whether their decision to escrow has been providently made. Moreover, such a notion elevates the escrow agent from an entity "instructed by SELLERS to deliver the Warranty Deed to PURCHASERS . . . when the SELLERS have provided the ESCROW AGENT with a receipt . . . ," as agreed by the parties, to the role of conservator for plaintiffs. Escrows are governed by contract law principles. The escrow agreement in this case does not impose a duty upon the escrow agent to verify the parties' compliance with the land contract; that is a matter for the parties to the land contract. I agree with the majority that plaintiffs were, on these facts, entitled to a paragraph 3(b) conveyance. I cannot agree, however, that on these facts the bank, as escrow agent, had a duty to effectuate that conveyance.

Nor can I agree that there exists a genuine issue of fact as to whether plaintiffs were third-party beneficiaries of the collection agreement between the sellers and defendant bank and thus able to assert a breach of that agreement when the bank did not apply against the sellers' mortgage the entire May 1 payment of $30,000.

MCL 600.1405; MSA 27A.1405 provides in relevant part:

Any person for whose benefit a promise is made
by way of contract, as hereinafter defined, has the
same right to enforce said promise that he would
have had if the said promise had been made
directly to him as the promisee.

(1) A promise shall be construed to have been
made for the benefit of a person whenever the
promisor of said promise has undertaken to give or
to do or refrain from doing something directly to
or for said person.

Here, there is nothing in the record that the
bank's agreement to act as defendant sellers' col-
lection agent constituted a promise to do some-
thing *directly* to or for plaintiff buyers. Indeed, it
would appear that the collection agreement be-
tween the bank and the sellers was strictly for the
sellers' convenience; any benefit plaintiffs may
have received from the arrangement was indirect
at best.

Moreover, even if plaintiffs could assert their
status as third-party beneficiaries under the collec-
tion agreement, there was uncontroverted evi-
dence that the terms of the collection agreement
were that the bank would collect the land contract
payments, deduct defendants' $393.18 mortgage
payment from each land contract payment, and
then forward the remaining balance of the land
contract payment to the sellers. In light of this
evidence, it is clear that the bank did *not* breach
the collection agreement by applying $393.18 of
plaintiffs' $30,000 May 1 land contract payment
toward the sellers' mortgage and then forwarding
the balance to them. To suggest that the bank may
have had a duty, much less the authority, to
decide for the sellers how they might spend the
remainder of the May 1 land contract payment
simply does not comport with the evidence before
the trial court.

Plaintiffs and the majority in this case would absolve the parties to the land contract of all responsibility for complying with its terms and place that responsibility with defendant bank. I simply cannot agree. As of May 1, plaintiff buyers had the right to a conveyance under the land contract subject to the assumption of sellers' mortgage, but neglected to exercise that right. The bank cannot justifiably be held responsible after the fact for that neglect. Defendant sellers had the duty to pay off their mortgage. The bank should not be held responsible for their decision not to do so. Accordingly, I would affirm the decision of the trial court to grant summary disposition in favor of defendant bank.