46 F.3d 1139
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
CITY OF FAIRBANKS, a municipal corporation of the State of
Alaska, Plaintiff-Appellant/Cross-Appellee,
v.
AMOCO CHEMICAL COMPANY, a corporation, aka Amoco Chemicals
Company, a successor of and formerly known as Amoco
Chemicals Corporation, and Amoco Reinforced Plastics
Company, a wholly owned subsidiary and alter ego of its
parent Amoco Chemical Company, Defendants-Appellees/Cross-Appellants.
 Nos. 92-36924, 92-36949.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted: March 9, 1994.
Decided: Jan. 13, 1995.
 
 Before: HUG, HALL, and THOMPSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 The City of Fairbanks, Alaska ("City"), filed suit in Alaska state court in September, 1987, alleging strict liability, negligence, breach of express and implied warranty, fraud and unfair trade practices arising from the collapse of pipes used in the City's sewer system. The City named as defendants Amoco Reinforced Plastics Company ("ARPCO"), a subsidiary of Amoco, United Technologies Corporation ("UTC"), and Armco, Inc. ARPCO subsequently removed the case to federal district court based on diversity of citizenship. Amoco Chemical Corporation ("Amoco") was added as a defendant. Prior to trial, the City settled its claims against all parties other than ARPCO and Amoco. All of the claims except the common law fraud claim were dismissed on the ground they were precluded by the applicable statutes of limitations. The district court also granted a partial summary judgment, holding that ARPCO was the alter ego of Amoco. After four days in a bifurcated jury trial, the district court granted a judgment as a matter of law in favor of the defendants. The City appeals from the final judgment, and Amoco cross-appeals on the partial summary holding that it was the alter ego of ARPCO.
 
 FACTS
 
 3
 In 1974, the City was preparing for the installation of 4.5 miles of large diameter sewer lines to be placed along Van Horn and Peger Roads, in Fairbanks, Alaska. The City's design consultants had previously identified a type of reinforced plastic pipe known as Techite as an acceptable alternative to concrete pipes. Techite was designed and manufactured by UTC until 1973, when it was acquired by ARPCO, a wholly owned subsidiary of Amoco.
 
 
 4
 The City installed the Techite pipe during the summer and fall of 1975. Within four years of the pipes' installation, a large sinkhole developed along Van Horn Road. Upon further investigation, the City determined that the large crater was attributable to the collapse of a 20-foot section of Techite sewer pipe. At that time, Amoco said the collapse was due either to "improper bedding at the time of initial installation" or "changes in the native soil conditions." Later, the City learned that the collapse of the Techite pipe was due to "strain corrosion," a condition allegedly caused by the sewage passing through the pipes. The City concluded that ARPCO had concealed the defective condition of the Techite pipes.
 
 
 5
 The collapsed sewer pipes caused extensive damage. Not only did the City experience property damage, but raw sewage spilled into the streets, flooded homes, and created a public health hazard. Consequently, the City was forced to "slipline" the Van Horn sewer line with smaller iron pipe, thereby reducing its carrying capacity by 30 percent. The City estimates the total damage caused by the collapsed sewer lines will exceed $39 million.
 
 
 6
 ARPCO moved for summary judgment on the City's claims. The district court granted ARPCO's request for summary judgment on the breach of warranty claims, holding that such claims were barred by the Uniform Commercial Code's four-year statute of limitations. The district court rejected ARPCO's other statute of limitations claims on the fraud and non-fraud causes of action and ordered the trial bifurcated so that the jury could resolve certain factual disputes. In the first trial, the jury was required to find whether ARPCO defrauded the City and, if so, when the City learned of the fraud. If the jury found that the City was defrauded, then there was to be a second trial addressing causation, allegations of improper installation, and misuse of the pipe and damages. The district court also granted partial summary judgment in favor of the City on the City's claim that ARPCO had operated as a "mere instrumentality" of Amoco; and, therefore, Amoco would be liable to the City because ARPCO was its alter ego.
 
 
 7
 The case was subsequently reassigned to a different judge who reaffirmed the bifurcation order, but modified the statute of limitations rulings, thereby barring all claims except the common law fraud claim. At the close of the City's case, the district court granted judgment as a matter of law because the City had not demonstrated reliance and ARPCO had no duty to disclose material facts relevant to the transaction. This appeal and cross-appeal followed.
 
 DISCUSSION
 I. Judgment as a Matter of Law
 
 8
 The City asserts that the district court erred in granting judgment as a matter of law against it on its common law fraud claim. We review an order granting judgment as a matter of law de novo. Donoghue v. County of Orange, 848 F.2d 926, 932 (9th Cir. 1988). A judgment as a matter of law is proper when the evidence permits only one reasonable conclusion as to the verdict. Id.
 
 
 9
 The City specifically challenges the two district court rulings that formed the basis for the grant of judgment as a matter of law: (1) that the City would be unable to establish fraud under an affirmative misrepresentation theory because the City failed to demonstrate by testimony of a witness that it relied on ARPCO's misrepresentations in purchasing the pipe, and (2) that ARPCO had no duty to warn the City of the Techite pipes' susceptibility to strain corrosion; and, thus, the nondisclosure theory of the fraud cause of action could not be maintained.
 
 
 10
 The City acknowledges that it was unable to establish reliance by the testimony of a specific witness who relied on the misrepresentations, but it argues that the jury should be permitted to infer reliance based on circumstantial evidence of the misrepresentations made and the action the City took in using the product. The City cites several cases as support for the proposition that reliance need not be proven in every misrepresentation case: State v. First Nat'l. Bank, 660 P.2d 406, 422 (Alaska 1982) and Cousineau v. Walker, 613 P.2d 608, 612 (Alaska 1980). We find the City's argument persuasive. The Alaska Supreme Court noted that a presumption of reliance is appropriate in fraud cases. "Where representations have been made ... and action has been taken, in the absence of evidence showing to the contrary, it will be presumed that the representations were relied on." First Nat'l. Bank, 660 P.2d at 422 n.26 (quoting 12 Williston on Contracts Sec. 1515, at 480). Therefore, we conclude that the district court erred by not applying the presumption of reliance in this case.
 
 
 11
 It is apparent that the City had substantial evidence to support its claim of misrepresentation. The parties dispute what evidence was admitted and whether other evidence was excluded because of the truncated issues to be tried in the bifurcated trial. Our review of the record convinces us that the City was precluded from introducing this evidence because of the strictures imposed by the bifurcated trial on the limited issues.
 
 
 12
 With respect to the nondisclosure theory, the City contends that ARPCO had a duty to disclose to the City during the negotiations the fact that the Techite pipes were unsuitable for transporting sewage through the wet, unstable soil conditions indigenous to Fairbanks. We reject ARPCO's contention that it had no such duty to disclose. Alaska law is clear that one who decides to speak is under a duty to disclose (1) facts necessary to prevent ambiguous statements from being misleading, (2) subsequently acquired information that makes previous statements misleading, and (3) facts basic to the transaction. Matthews v. Kincaid, 746 P.2d 470, 471-72 (Alaska 1987).
 
 
 13
 The City offered evidence demonstrating that ARPCO had knowledge of the alleged unsuitability of Techite pipes for the Fairbanks' sewer project. Two of the City's witnesses testified that ARPCO knew of problems with the Techite pipes and their unsuitability for use in the City's sewer system. In addition, the district court excluded other evidence sought to be introduced by the City that would have further buttressed the City's argument that ARPCO concealed defects in the Techite pipes. Because the City offered evidence of ARPCO's knowledge of the unsuitability of the Techite pipes, which would establish that ARPCO was under a duty to disclose such information, the City should have been permitted to take its case to the jury. The grant of judgment as a matter of law on the nondisclosure theory was therefore improper.
 
 
 14
 We remand to the district court for a trial on the City's allegations of common law fraud, misrepresentation, and nondisclosure.
 
 II. Statute of Limitations
 
 15
 The district court ruled that the City's non-fraud causes of action were barred by the applicable statute of limitations. The City argues that this decision was error because the underlying basis for the causes of action was fraud and therefore the statute of limitations should have been tolled until the City "discovered" the fraud. The district court's interpretation of Alaska's discovery rule is a question of law reviewed de novo by this court. In re McLinn, 739 F.2d 1395, 1397 (9th Cir. 1984) (en banc).
 
 
 16
 In general, Alaska law provides a six-year statute of limitations period for the commencement of a cause of action brought by a municipality. If, however, the cause of action is based on fraud, the statute of limitations is tolled until the aggrieved party discovers the fraud. The relevant Alaska statute states:
 
 
 17
 An action brought in the name of or for the benefit of the state, any political subdivision, or public corporation may be commenced only within six years of the date of the accrual of the cause of action. However, if the action is for relief on the ground of fraud, the limitation commences from the time of the discovery by the aggrieved party of the facts constituting the fraud.
 
 
 18
 Alaska Stat. Sec. 09.10.120. The parties do not dispute that the statute of limitations on the City's fraud claims was tolled until the City "discovered" the fraud. The City does dispute, however, the district court's conclusion that the discovery rule only applied to the fraud claim, and that it did not revive the negligence and strict liability claims which arose from the fraud.
 
 
 19
 The City cites Carter v. Hoblit, 755 P.2d 1084 (Alaska 1988), for the proposition that section 09.10.120 should be interpreted to revive the non-fraud causes of action that are otherwise barred by the applicable statutes of limitations. For several reasons, we disagree that Alaska courts would adopt the City's interpretation of the statute. First, there is nothing in Carter that supports the City's contention that the discovery rule should be extended to revive the City's non-fraud causes of action. Second, the theory advanced by the City would lead to illogical results by subjecting causes of action to multiple and inconsistent statutes of limitations.
 
 
 20
 In Carter, the plaintiff brought suit requesting a decree conveying to him an interest in property fraudulently obtained during a land transaction 35 years earlier. Despite the fact that a 10-year statute of limitations governed the suit, the court permitted him to maintain his claim on the basis that the defendant had acted fraudulently in concealing his sole ownership in the property. The City fails to recognize, however, that the plaintiff in Carter was able to maintain his fraud cause of action only. Although the court engaged in a discussion of the merits of the contract claim, it did so in an effort to ascertain the reasonableness of the suit. The court did not suggest that the plaintiff would be permitted to maintain a cause of action for breach of contract. Thus, Carter does not support the City's argument that the non-fraud statute of limitations should be tolled because the underlying wrong in this case was based on fraud.
 
 
 21
 To advance the City's theory would lead to anomalous results in cases alleging more than one theory of liability. Under the City's interpretation of this statute, causes of action alleging two theories would be subject to one--in this case the longer--statute of limitations. An illogical result such as this cannot reflect the intent of the Alaska Legislature in adopting this section of the code. Rather, we agree with ARPCO that each claim alleged in a complaint is subject to its respective limitations period. See Farmer v. State, 788 P.2d 43, 46 (Alaska 1990); Kodiak Elec. Ass'n. v. Delaval Turbine, Inc., 694 P.2d 150, 154-56 (Alaska 1984); King v. First Nat'l. Bank, 647 P.2d 596, 601-02 (Alaska 1982); Anderson v. Fairchild Hiller Corp., 358 F. Supp. 976, 977-78 (D. Alaska 1973). Thus, the district court properly concluded that the City's non-fraud causes of action were barred by their respective statutes of limitations.
 
 
 22
 We also reject the City's contention that ARPCO should be equitably estopped from relying on the statute of limitations. As the district court noted, the City never pursued an equitable estoppel theory in the district court. The City cannot be permitted to advance such a theory on appeal. See Pierce County Hotel Employees and Restaurant Employees Health Trust v. Elks Lodge, B.P.O.E. No. 1450, 827 F.2d 1324, 1328-29 (9th Cir. 1987).
 
 III. Unfair Trade Practices Act
 
 23
 The City challenges the district court's dismissal of its statutory fraud claim brought pursuant to the Alaska Unfair Trade Practices Act, AS Sec. 45.50.471 et seq. ARPCO contends that the City should not be permitted to maintain a fraud cause of action under the Unfair Trade Practices Act ("the Act"). We reject ARPCO's arguments.
 
 
 24
 ARPCO's first argument is that the City should not be permitted to sue under the Act because the Act requires that such causes of action be brought by aggrieved "persons," and the City does not satisfy the statutory definition of person. Although the Act itself does not define the term "persons", we turn to the general definitional provisions of the Alaska code for guidance. Section 01.10.060(8)(Add. 1) defines the relevant term as including "a corporation, company, partnership, firm, association business trust, or society, as well as natural person." The City is a municipal corporation, incorporated under the laws of the state, and thus a "person" within the meaning of the Act.
 
 
 25
 We are also unpersuaded by ARPCO's second contention that the Act does not apply to the commercial transaction involved in the present case. ARPCO argues that the Act was intended to apply only to the purchase of consumer goods and services. ARPCO, however, has not offered a sound justification for excluding commercial transactions from the protections provided by this statute. Moreover, the fact that the word "person" includes corporations and other business entities evidences the Legislature's intent that the Act apply to commercial transactions such as the one involved in the present case. If the Legislature intended that the statute apply only to the purchase of consumer products by natural persons, it would have so indicated. We reverse the decision of the district court and remand for a trial on the City's allegation of a violation of the Unfair Trade Practices Act.
 
 
 26
 IV. Grant of Summary Judgment on the Alter-Ego Issue
 
 
 27
 On cross-appeal, Amoco contends that the district court erred in granting summary judgment on the alter-ego issue. We review a grant of summary judgment de novo. Jones v. Union Pacific R.R., 968 F.2d 937, 940 (9th Cir. 1992). We must determine, viewing the evidence in the light most favorable to the non-moving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. Jesinger v. Nevada Federal Credit Union, 24 F.3d 1127, 1130 (9th Cir. 1994). We are not permitted to weigh the evidence or determine the truth of the matter, but only determine whether there are genuine issues for trial. Id. at 1131.
 
 
 28
 In general, a parent corporation is not liable for the wrongs of its wholly owned subsidiary. Jackson v. General Electric Co., 514 P.2d 1170, 1172 (Alaska 1973). An important exception to this rule, however, is that a parent corporation will be liable for the wrongs of its subsidiary if the parent corporation has not permitted its subsidiary to exercise its "independent status" as a separate corporate entity. Id. at 1173. The City sought to use this "alter-ego doctrine" to pierce the corporate veil and impose liability on Amoco for the failure of the Techite pipes. The district court granted the City's motion for summary judgment in spite of Amoco's contentions that material issues of fact existed with respect to the relationship between the two corporations.
 
 
 29
 Amoco asserts two reasons as to why the grant of summary judgment on the alter-ego issue was improper. First, although Amoco concedes that an analysis of the 11-part "mere instrumentality" test is essential to an inquiry of whether ARPCO acted as the alter ego of Amoco, Jackson, 514 P.2d at 1173, Amoco argues that the district court erred by not requiring the City also to prove that the subsidiary's corporate form was used to "defeat public convenience, justify wrong, commit fraud, or defend crime." According to Amoco, in order to justify piercing the corporate veil, the plaintiff must satisfy both the "mere instrumentality" test and the "defeats public convenience" test. We disagree.
 
 
 30
 In McKibben v. Mohawk Oil Co., Ltd., 667 P.2d 1223, 1229 (Alaska 1983), the Alaska Supreme Court identified the "mere instrumentality" test and the "defeats public convenience" test as alternative methods for piercing the corporate veil. The Court stated:
 
 
 31
 Two theories may be used to justify disregarding the corporate status of a subsidiary. First, a parent corporation may be held liable for the conduct of its subsidiary when the parent uses a separate corporate form to defeat public convenience, justify wrong, commit fraud or defend crime. Second, a parent corporation may be held liable on the alternative theory that the subsidiary is the mere instrumentality of the parent.
 
 
 32
 Id. (emphasis added).
 
 
 33
 Amoco cites two cases decided subsequent to McKibben in an effort to persuade us that a plaintiff is entitled to pierce the corporate veil only if it has demonstrated that the corporate form was used to "defeat public convenience, justify wrong, commit fraud or defend crime." We read these cases differently. In both cases, the Alaska court recognized the continued viability of the "mere instrumentality" test and the "defeats public convenience" test as alternative means of piercing the corporate veil. Croxton v. Crowley Maritime Corp., 817 P.2d 460, 465, n.9 (Alaska 1991) (mere instrumentality test is an alternative to defeat public interest test); Murat v. F/V Shelikof Strait, 793 P.2d 69, 78-79 (Alaska 1990) (summary judgment improper because issues of fact existed as to whether the corporation was formed to "defeat public convenience, justify wrong, commit fraud or defend crime or one which functioned as a mere alter-ego" of its parent.) (emphasis added). Therefore, we conclude that Alaska law establishes that the "mere instrumentality" test and the "defeats public convenience" test are alternative means of piercing the corporate veil. The district court properly decided that the City was required only to demonstrate that ARPCO was the "mere instrumentality" of Amoco, and that it need not also prove the corporation was formed to "defeat public convenience."
 
 
 34
 Because the district court's ruling was based on the "mere instrumentality" test, we must consider Amoco's second argument that summary judgment was improperly granted on the basis that the subsidiary corporation was undercapitalized. In granting summary judgment, the district court considered the 11-part "mere instrumentality" test established in Jackson, 514 P.2d at 1173, and concluded on the basis of only one factor--undercapitalization--that the grant of summary judgment was appropriate.
 
 
 35
 Amoco's assertion that undercapitalization alone is an insufficient basis to justify a finding that a subsidiary corporation acted as the alter ego of its parent is persuasive. Alaska law establishes that a finding of undercapitalization alone is insufficient to warrant piercing the corporate veil. Murat, 793 P.2d at 78. "[I]t remains the general rule that inadequate capitalization, while an important factor, is not alone sufficient to justify piercing the corporate veil." Id. Thus, the district court's grant of summary judgment solely on this basis was improper.
 
 
 36
 Moreover, Amoco demonstrated the existence of triable issues of fact with respect to the remaining factors to be considered in analyzing the subsidiary's status as a "mere instrumentality." Jackson, 514 P.2d at 1173. Alaska law does not require the presence of all 11 factors before the subsidiary's corporate status will be disregarded, id. at 1173; see also Murat, 793 P.2d at 78, but it does require more than merely a finding of undercapitalization. We find material issues of fact sufficient to defeat summary judgment with respect to several of the remaining factors. For example, the parties dispute the degree of commonality between the directors and officers of Amoco and ARPCO, the level of financial interrelationship between the two corporations, and Amoco's level of managerial control. Viewing these disputed factual issues in the light most favorable to Amoco, we cannot conclude that this issue was appropriately resolved on summary judgment. Therefore, we reverse and remand for further proceedings to determine this issue.
 
 CONCLUSION
 
 37
 We reverse and remand for further proceedings on the City's claim for common law fraud and on the statutory claim under the Unfair Trade Practices Act and for further proceedings on the issue of whether ARPCO is the alter ego of Amoco.
 
 
 38
 AFFIRMED in part, REVERSED in part, and REMANDED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3