THE HILLS OF LONE PINE ASSOCIATION v TEXEL LAND CO, INC

Docket No. 192947. Submitted July 2, 1997, at Detroit. Decided October 21, 1997, at 9:25 A.M.

The Hills of Lone Pine Association brought an action in the Oakland Circuit Court against Texel Land Co., Inc., and First American Title Insurance Company, seeking damages following Texel's failure or refusal to complete construction of the "must be built" roads of the plaintiff's condominium project. At issue in the action was whether First American, as escrow agent, properly released to Texel funds retained in escrow for the completion of the "must be built" roads. The court, Steven N. Andrews, J., awarded a default judgment for the plaintiff against Texel, but the plaintiff was unable to collect the judgment because of Texel's apparent insolvency. The court then denied the plaintiff's motion for summary disposition against First American and granted summary disposition for First American. The plaintiff appealed from that judgment and order.

The Court of Appeals *held*:

1. The purpose of the escrow funds was to provide sufficient security to assure completion of the "must be built" structures and improvements. Although the Condominium Act allows an escrow agent to release escrow funds to a developer where the developer furnishes the escrow agent with evidence of "adequate security," such security must be adequate to secure the full repayment of the released funds.

2. The indemnification agreement Texel provided to First American in return for the release of the funds in the escrow account was a mere promise that was unsupported by security, collateral, or common sense. The trial court erred in granting summary disposition for First American.

3. The trial court did not err in denying the plaintiff's motion for summary disposition.

Affirmed in part and reversed in part.

CONDOMINIUMS — ESCROWS — "MUST BE BUILT" STRUCTURES AND IMPROVEMENTS.

The Condominium Act provides that developers must retain sufficient funds in escrow to assure the completion of certain "must be built" structures and improvements; a developer may not withdraw escrow funds to pay for "must be built" structures and improve-

ments unless such items are substantially complete or the developer furnishes the escrow agent with evidence of "adequate security" to secure the full repayment of the released funds (MCL 559.184[4], 559.203b[3][c],[d],[5]; MSA 26.50[184][4], 26.50[203b][3][c],[d],[5]).

*Dickinson, Wright, Moon, Van Dusen and Freeman* (by *Charles T. Harris, Robert W. Powell,* and *Joseph W. DeLave*), for the plaintiff.

*May, Simpson & Strote* (by *Thomas C. Simpson, John A. Forrest,* and *Marilynn K. Arnold*), for First American Title Insurance Company.

Before: MURPHY, P.J., and MICHAEL J. KELLY and GRIBBS, JJ.

GRIBBS, J. Plaintiff appeals the circuit court judgment and order denying plaintiff's motion for summary disposition and granting sua sponte summary disposition in favor of First American Title Insurance Company (hereafter defendant). At issue was whether defendant, as escrow agent, properly released to the developer, defendant Texel Land Co., Inc.,[1] the funds retained in escrow for completion of required items in a condominium project, under the provisions of the Condominium Act, MCL 559.101 *et seq.*;   MSA 26.50(101) *et seq.* We affirm in part and reverse in part.

The Condominium Act provides that developers must retain sufficient funds in escrow to assure completion of certain "must be built" structures and improvements. MCL 559.184(4);   MSA 26.50(184)(4). The alternative to retaining sufficient funds in escrow is set out by statute. At issue here is whether Texel

---

[1] Defendant Texel is not a party on appeal.

provided "adequate security" for release by defendant of escrow funds pursuant to the provision described in MCL 559.203b(5); MSA 26.50(203b)(5):

> In place of retaining funds in escrow under subsection (3), the developer may, if the escrow agreement so provides, furnish an escrow agent with *evidence of adequate security*, including, without limitation, an irrevocable letter of credit, lending commitment, indemnification agreement, or other resource *having a value, in the judgment of the escrow agent, of not less than the amount retained* pursuant to subsection (3). [Emphasis added.]

The escrow agent is relieved of liability for release of the funds as long as the agent acts "pursuant to this act." MCL 559.203b(9); MSA 26.50(203b)(9).

The parties' escrow agreement in this case provided that escrow funds could be released by defendant only if Texel

> has placed with [defendant] an irrevocable letter of credit drawn in favor of [defendant] in form and substance satisfactory to [defendant] and *securing full repayment of said sums*, or has placed with [defendant] such other substitute security as may be permitted by law and approved by [defendant]. [Emphasis added.]

In this case, Texel deposited the necessary escrow money as required by the act. Later, defendant and Texel entered into a series of indemnity agreements in which defendant released all but $5,000 from the escrow fund. In exchange for the release of funds, Texel agreed that it would indemnify and hold defendant harmless

> from and against any and all claims, demands, losses, actions, causes of action and reasonable attorney fees sustained or incurred by [defendant] as a result of (i) any and

> all claims or demands made by parties making deposits for refund of such deposits, (ii) any claims or demands made for said deposits by any parties asserting that the deposits are paid to them to be used for purposes set forth in the [Condominium] Act and (iii) any matters based, directly or indirectly, on allegations that [defendant] has not fulfilled its responsibilities as Escrow Agent as set forth in the [Condominium] Act.

Texel ultimately failed or refused to complete construction of the "must be built" roads of the condominium project, and plaintiff alleges that the cost of the construction and repairs exceeded $384,000. Plaintiff brought action against defendant and Texel in this matter. Although plaintiff was awarded a default judgment against Texel, it was unable to collect the judgment because Texel is apparently insolvent. Plaintiff subsequently filed the motion for summary disposition against defendant and, in denying plaintiff's motion, the trial court granted summary disposition to defendant.

Defendant argued before the trial court and here that summary disposition in favor of defendant was appropriate because there was no question of material fact that defendant complied with the escrow agreement and the act when it released the escrow funds to Texel. We disagree and reject the implicit conclusion that indemnification agreements, even when unsecured, *necessarily* "constitute legal substitute security" under the act.

The primary goal of judicial interpretation of statutes is to ascertain and give effect to the intent of the Legislature. *People v Stanaway*, 446 Mich 643, 658; 521 NW2d 557 (1994). The starting point in every case involving construction of a statute is the language itself. *House Speaker v State Administrative*

*Bd,* 441 Mich 547, 567; 495 NW2d 539 (1993). If the language used is clear, then the Legislature must have intended the meaning it has plainly expressed, and the statute must be enforced as written. *Gebhardt v O'Rourke,* 444 Mich 535, 541-542; 510 NW2d 900 (1994). However, if reasonable minds can differ with regard to the meaning of a statute, judicial construction is appropriate. *Dep't of Social Services v Brewer,* 180 Mich App 82, 84; 446 NW2d 593 (1989). The court must look to the object of the statute in light of the harm it is designed to remedy and apply a reasonable construction that best accomplishes the purposes of the statute. *Marquis v Hartford Accident & Indemnity (After Remand),* 444 Mich 638, 644; 513 NW2d 799 (1994).

Moreover, the duties and liabilities imposed on an escrow agent are those set forth in the escrow agreement. *Smith v First Nat'l Bank & Trust Co of Sturgis,* 177 Mich App 264, 268; 440 NW2d 915 (1989); *Starboard Tack Corp v Meister,* 103 Mich App 557, 562; 303 NW2d 38 (1981). The escrow agreement, like all contracts, is to be construed to effectuate the intent of the parties. *Smith, supra.*

In this case, the purpose of the escrow funds is clearly indicated in both the parties' purchase agreement and in MCL 559.184(4)(c);   MSA 26.50(184) (4)(c):

> [T]he developer is required to retain sufficient funds in escrow *or to provide sufficient security to assure completion* of only those uncompleted structures and improvements labeled under the terms of the condominium documents, "must be built." [Emphasis added.]

Under ordinary circumstances, an engineer or an architect must certify that a "must be built" structure or improvement is substantially complete before the developer may withdraw escrow funds to pay for that item. MCL 559.203b(3)(c)   and (d);   MSA 26.50(203b)(3)(c)  and (d).

Unless the "must be built" items are substantially complete, the relevant statute provides that an escrow agent may release escrow funds to a developer only if the developer furnishes the escrow agent with   evidence   of   "adequate   security."   MCL 559.203b(5);   MSA 26.50(203b)(5).   The statutory provision lists several examples of "adequate security," including an irrevocable letter of credit, a lending commitment, and an indemnification agreement. Irrevocable letters of credit are regulated by statute, MCL 440.5101 *et seq.*;   MSA 19.5101 *et seq.* and lending commitments are secured by a commitment from a bank or other lender that money will be provided to the person requesting the loan. These examples of "adequate security," coupled with the express statutory purpose of providing sufficient security to ensure the completion of "must be built" items, lead us to conclude that the Legislature intended that the indemnification agreement provided by Texel here would also be backed by some sort of security or collateral.

Here, the indemnification agreement was a mere promise that, if Texel were not solvent enough to repay the escrow funds, it would nonetheless indemnify defendant for releasing those funds. The act expressly requires that the security offered by the developer must be adequate to secure the full repayment of the released funds. The indemnification agreement given by Texel in this case was unsup-

ported by security, collateral, or common sense.[2] Accordingly, the trial court erred in granting defendant summary disposition on this basis. However, we are not convinced that the trial court erred in denying plaintiff's motion for summary disposition. Defendant suggests in its brief that there were issues of fact not addressed by the trial court, such as: (1) whether the "must be built" roads were substantially complete before the escrow funds were released, and (2) whether Texel provided, in addition to the indemnification agreement, evidence of substantial valid lending commitments to secure repayment of the escrow funds.[3] In light of these issues not raised or considered by the trial court, we are not convinced that summary disposition for plaintiff is appropriate at this time.

The trial court's denial of plaintiff's motion for summary disposition is affirmed. The trial court's grant of summary disposition to defendants is reversed. We do not retain jurisdiction. Plaintiff, being the prevailing party, may tax costs pursuant to MCR 7.219.

---

[2] We wonder if defendant would consider it reasonable to loan more than $350,000 of its own money in exchange for an unsecured promise.

[3] We find unpersuasive defendant's claim that acceptance of an unsecured indemnification agreement similar to the agreement at issue is common practice in the industry.