*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

EUGENE BOMBER,

        Plaintiff-Appellant,

v

FIEGER & FIEGER, PC, and FIEGER, FIEGER, KENNEY & HARRINGTON, PC,

        Defendants-Appellees.

UNPUBLISHED
February 21, 2019

No. 339656
Oakland Circuit Court
LC No. 2017-157025-NM

Before: CAVANAGH, P.J., and BORRELLO and REDFORD, JJ.

PER CURIAM.

Plaintiff appeals as of right an order granting summary disposition to defendants. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

This matter arises from defendants' legal representation of plaintiff for two matters: a long term disability dispute with Cigna and a medical malpractice action against Beaumont Hospital. On July 29, 2013, plaintiff retained Craig Romanzi—an independent private attorney, who was not yet affiliated with defendants—to represent him. In 2014, Romanzi joined defendants' firm and brought with him plaintiff's two lawsuits. On June 11, 2014, Cigna informed plaintiff that its previous decision to deny his long term disability claim had been overturned resulting in defendant receiving a check from Cigna in the amount of $3,196. On November 10, 2014, Romanzi mailed plaintiff a check for $2,123.83 for November's long term disability benefits, which represented the total amount after Romanzi deducted $1,072.17 for attorney fees and costs.

On December 15, 2014, former Wayne Circuit Court Chief Judge James J. Rashid mediated plaintiff's medical malpractice action with Beaumont Hospital. The mediation resulted in a proposed settlement of $136,000. On January 21, 2015, plaintiff signed a settlement agreement with Beaumont Hospital, wherein he agreed that defendants would set aside funds in a trust account in order to satisfy all potential liens against him. Pursuant to the terms of the settlement agreement, plaintiff's medical malpractice suit was dismissed with prejudice on

January 26, 2015. Defendants deposited the entire settlement amount into an Interest on Lawyers Trust Account (IOLTA) per the terms of the settlement agreement. The settlement breakdown noted liens from Cigna, Blue Cross Blue Shield, and Communicare, Michigan, LLC, for a total of $106,883.69. As of May 5, 2015, defendants collected $39,546.36 in fees and $12,360.93 in costs. It appears that, at one point, Geoffrey Fieger mailed plaintiff a letter to notify him that Cigna was proposing to reduce its lien from $70,312 to $29,821. The record does not indicate whether plaintiff accepted Cigna's proposal.

On February 28, 2015, Myra Manalo, an employee of defendants' firm, informed plaintiff that Romanzi left defendants' firm on short notice earlier that month, and that Fieger began to personally oversee plaintiff's actions. On May 14, 2015, plaintiff's wife, Lauren Bomber, sent defendants an email regarding plaintiff's long term disability payments and settlement proceeds that plaintiff had not received. Defendants did not reply.

On June 17, 2015, plaintiff filed a complaint against defendants with the Attorney Grievance Commission (AGC) regarding his medical malpractice claim. Though they did not provide an explanation, the AGC took no action and so informed plaintiff.

On January 26, 2017, plaintiff filed a complaint against defendants, alleging legal malpractice. Somewhat germane to this appeal, plaintiff contended that, although the final order disposing of his medical malpractice claim was entered on January 26, 2015, defendants continued to represent him through February 2017. According to plaintiff, defendants received various payments in connection with his long term disability claim and paid themselves fees out of those payments even though they "did not perform any work to produce the recovery for those checks . . . ." Plaintiff also alleged that defendants settled his medical malpractice action for "far less money" than what would have been appropriate had defendants properly handled his case, and that he was unable to make an informed decision regarding settlement because defendants failed to provide him with the necessary information. Plaintiff also alleged that defendants mishandled "various lien claims related to the settlement" of his medical malpractice claim, and that "[t]here was a potential or actual Medicare lien claim that [d]efendants knew or should have known about[,] but failed to properly handle."

Defendants did not file an answer in response to plaintiff's complaint. Instead, on May 10, 2017, defendants filed a motion for summary disposition pursuant to MCR 2.116(C)(7), (8), and (10). Defendants first argued that plaintiff's claim should be dismissed under MCR 2.116(C)(7) because plaintiff's claim was barred by MCL 600.5838, which imposes a two-year statute of limitations in legal malpractice cases. Defendants also argued that plaintiff's claim should be dismissed under MCR 2.118(C)(8) because plaintiff failed to state any facts in support of his claims that defendants' actions amounted to legal malpractice. According to defendants, plaintiff's complaint merely listed bald conclusions that defendants failed to properly handle plaintiff's medical malpractice case and failed to provide plaintiff the necessary information to make an informed decision regarding settlement.

The trial court held a hearing on defendants' motion for summary disposition on July 19, 2017, and on July 21, 2017, the trial court granted defendants' motion for summary disposition pursuant to MCR 2.116(C)(8) and (10). In its opinion and order, the trial court rejected defendants' statute of limitations argument, but held that summary disposition was appropriate

because plaintiff "failed to present any documentary evidence establishing the existence of a material factual dispute" or that "further discovery would have created a genuine issue of material fact." This appeal then ensued.

## II. ANALYSIS

On appeal, plaintiff argues that the trial court erroneously granted defendants' motion for summary disposition because there is a genuine issue of material fact as to whether defendants committed legal malpractice.

Though the trial court relied on MCR 2.116(C)(8) and (10) to grant defendants' motion for summary disposition, this Court must treat defendants' motion as having been decided only under MCR 2.116(C)(10) because the trial court considered evidence beyond the pleadings to determine that there was no genuine issue of material fact. See *Van Buren Charter Twp v Visteon Corp*, 319 Mich App 538, 544; 904 NW2d 192 (2017) (treating "the trial court's decision with respect to Subrule (C)(8) as though it were made only pursuant to Subrule (C)(10)" because the trial court went beyond the pleadings to decide the defendant's motion for summary disposition), citing *Sharp v Lansing*, 238 Mich App 515, 518; 606 NW2d 424 (1999).

This Court reviews a motion for summary disposition de novo. *Gorman v American Honda Motor Co Inc*, 302 Mich App 113, 115; 839 NW2d 223 (2013). A motion for summary disposition under MCR 2.116(C)(10) should be granted if the evidence submitted by the parties fails to establish a genuine issue of a material fact, and the moving party is entitled to judgment or partial judgment as a matter of law. *Innovation Ventures v Liquid Mfg*, 499 Mich 491, 507; 885 NW2d 861 (2016). A genuine issue of material fact exists if, after viewing the record in a light most favorable to the nonmoving party, reasonable minds could differ on an issue. *West v Gen Motor Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). This Court reviews only the evidence that was presented at the time the motion was decided, which, under MCR 2.116(C)(10), includes affidavits, pleadings, depositions, and other evidence that the parties submitted. *Innovation Ventures*, 499 Mich at 507. Additionally, the trial court reviews the evidence in a light most favorable to the party opposing the motion. *Gorman*, 302 Mich App at 115.

Defendants moved for summary disposition on the ground that there is no genuine issue of material fact as to whether defendants committed legal malpractice. In order to successfully advance a legal malpractice claim, the plaintiff must show: "(1) the existence of an attorney-client relationship; (2) negligence in the legal representation of the plaintiff; (3) that the negligence was the proximate cause of an injury; and (4) the fact and extent of the injury alleged." *Manzo v Petrella*, 261 Mich App 705, 712; 683 NW2d 699 (2004), citing *Charles Reinhart Co v Winiemko*, 444 Mich 579, 585-586; 513 NW2d 773 (1994).

Defendants do not dispute that plaintiff and defendants shared an attorney-client relationship during the time that defendants negotiated plaintiff's medical malpractice settlement, thereby satisfying the first element. However, plaintiff must still establish that there is a question of fact regarding whether defendants were negligent in negotiating plaintiff's settlement, defendants' negligence proximately caused an injury to plaintiff, and plaintiff could demonstrate the fact and extent of his damages. See *Manzo*, 261 Mich App at 712.

To that point, plaintiff asserts that defendants committed legal malpractice, in part, by mishandling his medical malpractice settlement. However, review of plaintiff's complaint and supporting documents reveals that plaintiff failed to introduce admissible evidence from which the trial court could conclude that there existed a question of fact regarding whether defendants' legal representation of him was negligent in failing to properly negotiate his settlement with Beaumont Hospital. Even considering the negligible documentary support that plaintiff provided in his answer to defendants' motion for summary disposition, plaintiff failed to demonstrate that a question of fact existed regarding whether defendants were negligent in providing plaintiff legal representation. The settlement amount to which plaintiff accepted was the same as proposed by former Wayne Circuit Court Chief Judge James J. Rashid. On January 20, 2015, plaintiff signed a settlement agreement for $136,000, which included the following clause:

> In entering into this AGREEMENT, EUGENE BOMBER, II represents that EUGENE BOMBER, II has relied upon the advice of his attorneys, Fieger, Fieger, Kenney, Giroux & Harrington P.C. who are the attorneys of his choice, concerning the legal and income tax consequences of this AGREEMENT; that the terms of this AGREEMENT have been completely read all five pages and explained to EUGENE BOMBER, II by his attorneys and that he has carefully read this AGREEMENT, fully understands the terms, content[,] and effect[,] which are voluntarily accepted by EUGENE BOMBER, II in executing this AGREEMENT.

> IN WITNESS WHEREOF, EUGENE BOMBER, II acknowledges that he has executed this AGREEMENT knowingly, voluntarily, under no duress[,] and as his own free act and deed.

The record establishes that defendants sought a settlement and urged plaintiff that a settlement would be in his best interests. While plaintiff contends that he was not fully advised of the consequences of settlement—specifically, that there would be no money left for him after he paid all outstanding liens and medical bills—there is no evidence to show that plaintiff did not knowingly and voluntarily sign his settlement agreement. The settlement agreement that plaintiff signed acknowledges that it was knowingly and voluntarily made. Additionally, plaintiff makes conclusory assertions relative to the settlement amount however plaintiff fails to explain why his settlement amount should have been higher. In the trial court, plaintiff failed to proffer any evidence to show how defendants actually mishandled his settlement agreement.

The absence of admissible evidence indicating negligence by the defendants relative to plaintiff's settlement, coupled with the settlement language as recited above, leads us to conclude that the trial court did not err in its finding that plaintiff failed to introduce admissible evidence to support his claim that defendants mishandled his settlement in the medical malpractice action. Thus, there is no evidence to demonstrate that there is a genuine issue of material fact that defendants mishandled plaintiff's settlement negotiations.

Moreover, plaintiff relies almost entirely on the allegations contained in his complaint, which is an insufficient response to a motion for summary disposition brought under MCR 2.116(C)(10). See MCR 2.116(G)(4) ("When a motion under subrule (C)(10) is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or

denials of his or her pleading, but must, by affidavits or as otherwise provided in this rule, set forth specific facts showing that there is a genuine issue for trial."). Although the trial court granted defendants summary disposition well before discovery was completed, plaintiff still failed to show, by affidavit or otherwise, that there are facts necessary to support his position that could not be presented because the facts are only known to persons whose affidavits could not be procured at that time. MCR 2.116(H)(1). In response to defendants' motion for summary disposition, plaintiff should have provided the names of individuals who he believed would provide testimony in support of his position and "the nature of their probable testimony." See MCR 2.116(H)(1)(a) and (b). Plaintiff's affidavit merely reiterates the general allegations contained in his complaint without any indication how he plans to prove those allegations, which is insufficient to create a genuine issue of material fact.

Plaintiff next argues that there is a genuine issue of material fact as to whether defendants committed legal malpractice because defendants mishandled various lien claims related to the settlement of the underlying medical malpractice action. Plaintiff specifically contends that defendants distributed funds to themselves for costs and fees and improperly withheld funds in order to pay outstanding liens from Cigna and Blue Cross Blue Shield. Defendants rely on the specific language of the settlement agreement to contend that they merely acted as a "contractual escrow agent," not than as plaintiff's attorney, in the course of satisfying plaintiff's outstanding liens. According to defendants, their authority to withdraw funds to satisfy outstanding liens and to pay themselves for costs and fees was derived directly from the settlement agreement. Notably, plaintiff does not address, or even acknowledge defendants' assertion that they were acting as an escrow agent rather than as plaintiff's attorney.

In order to effectuate the parties' intent, this Court will look to the specific language of the escrow agreement, which sets forth the escrow agent's duties and liabilities. *Hills of Lone Pine Ass'n v Texel Land Co, Inc*, 226 Mich App 120, 124; 572 NW2d 256 (1997). The actions of an escrow agent are dictated by the terms and conditions of the escrow agreement. *Smith v First Nat'l Bank & Trust Co of Sturgis*, 177 Mich App 264, 270-271; 440 NW2d 915 (1989).

While an escrow agent may be held liable for the negligent performance of its duties or breach of duties, *id*. at 271, plaintiff has not shown that there is a genuine issue of material fact that such negligence occurred. In the settlement agreement for the underlying medical malpractice action, plaintiff specifically agreed that he would be solely responsible for paying all valid liens, and "due to the potential liens, [defendants] will set aside in the lawyer's trust account sufficient amounts from the proceeds of the settlement, payment to satisfy all potential liens . . . ." Thus, defendants were contractually obligated by the settlement agreement to pay any valid outstanding liens from the settlement proceeds. According to Geoffrey Fieger, he placed the settlement proceeds into an IOLTA and disbursed funds, as an escrow agent, to settle liens that were "specifically authorized and mandated" by the settlement agreement. No evidence exists to refute Fieger's assertion. Although defendants asserted in their motion for summary disposition that they were acting as escrow agents, plaintiff's answer and brief on appeal are silent on this point. Plaintiff merely concludes that there was negligence in distributing funds from the settlement proceeds without any factual support that such distribution amounted to negligence. Based on plaintiff's failure to comply with MCR 2.116(G)(4) alone, summary disposition was appropriate.

Plaintiff also alleges a number of other allegations, including defendants' improper payments to themselves for costs and fees from plaintiff's long term disability checks, failure to negotiate plaintiff's liens with Cigna and Blue Cross Blue Shield, and awareness of a "potential or actual Medicare lien claim." However, there is no factual basis for any of these claims because plaintiff does not provide any evidence to support them. Fieger maintains that neither he nor any other attorney at defendants' firm were retained to negotiate on plaintiff's behalf, and the settlement agreement acknowledges plaintiff's consent to pay costs and fees out of the settlement proceeds. In the absence of any evidence contrary to the settlement agreement signed by plaintiff, the trial court correctly granted summary disposition in this matter. Accordingly, we conclude that the trial court properly granted summary disposition to defendants.

Affirmed. Defendants having prevailed in full, may tax costs. MCR 7.219(A).


/s/ Mark J. Cavanagh
/s/ Stephen L. Borrello
/s/ James Robert Redford

-6-